IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SKY JET M.G. INC., <br><br>          Plaintiff, <br><br>   v. <br><br>ELLIOTT AVIATION, INC. and ELLIOTT AVIATION OF THE QUAD CITIES, INC., <br><br>          Defendants. | Case No. 15 C 8113 <br><br> Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sky Jet M.G. Inc. ("Sky Jet") filed a three-count Complaint for negligence and breach of contract against Defendants Elliott Aviation, Inc., and Elliott Aviation of the Quad Cities, Inc. (collectively, "Elliott"). Before the Court are Elliot's Motions transfer the case to the Western Division of this District pursuant to 28 U.S.C. § 1404(a) [ECF No. 16], and to dismiss Sky Jet's negligence claims (Counts I and II) pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 14]. For the reasons stated herein, both Motions are denied.

**I. BACKGROUND**

The Court draws the following facts, which it accepts as true, from Sky Jet's Complaint. Elliott provides aircraft inspection, repair, and maintenance services from its facility at the Quad City Airport in Moline, Illinois. Sky Jet offers private

aircraft charters and flights throughout Quebec, Ontario, and the United States.

In late May of 2013, Elliott prepared a quote for a landing gear inspection to be performed on one of Sky Jet's aircraft (the "Subject Aircraft"). According to the contract, which is attached to the Complaint, the work included the removal and disassembly of the main and nose landing gear, inspection for wear and corrosion, reassembly, painting, and reinstallation. The contract further provides that the rights and obligations of both parties are "governed and determined by the laws of the State of Iowa," and that Sky Jet submits to exclusive jurisdiction in "the state of Iowa and other such jurisdictions in which the work is performed (including federal courts within said states)."

Elliott performed the specified work on the Subject Aircraft in mid-June of 2013. It then completed several certifications stating that the Subject Aircraft's main and nose landing gear assembly systems were overhauled in accordance with Federal Aviation Administration and European safety regulations.

A few months later, on September 22, 2014, the Subject Aircraft's landing gear malfunctioned during flight. The Subject Aircraft crash landed at an airport in Quebec City, incurring extensive damages. A cargo pod and other property in or near the Subject Aircraft were also damaged in the crash.

## II. **ANALYSIS**

### A. Motion to Transfer

The Court begins with Elliot's Motion to Transfer this case to the Northern District of Illinois, Western Division. The Western Division provides a more convenient forum, Elliott argues, because the federal courthouse in Rockford is relatively closer to Moline. Sky Jet counters that Moline is located in the Central District of Illinois, and that in any case, the parties consented to venue in any federal court in Illinois.

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Transfer is appropriate if (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *Methode Elecs., Inc. v. Delphi Auto. Sys. LLC,* 639 F.Supp.2d 903, 907 (N.D. Ill. 2009) (citation and internal quotations omitted). In evaluating the second and third factors, the Court considers "both the private interests of the parties and the public interests of the court." *Medi USA v. Jobst Inst., Inc.,* 791 F.Supp. 208, 210 (N.D. Ill. 1992). District courts have broad discretion in weighing these factors, and the party seeking transfer has the burden of

establishing, by reference to particular circumstances, "that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir. 1986).

### 1. *Venue*

The parties do not dispute that their contract includes a forum selection clause, which states that Sky Jet submits to the jurisdiction of Iowa "and other such jurisdictions in which the work is performed (including federal courts within said states)."

Because Elliott performed the landing gear inspection in Moline, Illinois, venue is proper within any federal court within the state, including the Northern District of Illinois. And because this District has no rule requiring divisional venue, either the Eastern or Western Division is appropriate. *Bjoraker v. Dakota, Minn. & E. R.R. Corp.,* No. 12 C 7513, 2013 WL 951155, at *2 (N.D. Ill. Mar. 12, 2013).

### 2. *Convenience of the Parties and Witnesses*

In assessing the convenience or "private interest" factors, the Court considers: "(1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." *Methode Elecs.,* 639 F.Supp.2d at 907 (citations omitted). Although courts typically afford a plaintiff's choice of forum significant weight, that weight is diminished if the chosen forum is not the plaintiff's home forum,

- 4 -

or if it lacks substantial connection with the material events of the case. *Bjoraker,* 2013 WL 951155, at *2. Although the Eastern Division is not Sky Jet's home forum, and no material events occurred here, Sky Jet asks the Court to give its choice of forum "substantial weight" because both parties agreed to it through the forum selection clause. Sky Jet relies on *Atlantic Marine,* in which the Supreme Court reiterated that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tx.,* 134 S.Ct. 568, 581 (2013) (citation and internal quotations omitted). In that case, however, the defendant sought to transfer a case to the specific forum listed in the forum selection clause, the Eastern District of Virginia. Here, the forum selection clause broadly provides for venue throughout Illinois. The Court cannot conclude that Sky Jet's choice of one contractually valid forum over another is entitled to substantial weight. However, Sky Jet's choice of forum is still entitled to some deference.

Elliott argues that the next "private interest" factor — the location of material events — supports transfer to the Western Division because it performed the landing gear inspection in Moline. However, Moline is located in Rock Island County, which is in the Central District of Illinois. *See,* 28 U.S.C. § 93(b).

The Western Division is thus no more connected to the material events of this case than the Eastern Division.

As for ease of access to sources of proof and the overall convenience of parties and witnesses, Elliott argues that the Western Division provides a more convenient forum because Rockford is approximately 67 miles closer to Moline than Chicago. Elliott notes that because the inspection occurred in Moline, important evidence will be located there. Elliott also speculates that its witnesses will likely be located in Moline and that Sky Jet's witnesses will likely be located in Quebec, but neither party will have any witnesses located in Chicago. Although Moline may be relatively closer to some of the sources of proof in this case — apart from any evidence found at the crash site in Quebec – Elliott has failed to show that the Western Division is "clearly more convenient." First, Elliott's complaint that the Eastern Division is inconvenient carries little weight because Elliott agreed to venue in any federal court within Illinois. A party that agrees to litigate a dispute in a particular forum pursuant to a forum selection clause "waive[s] the right to assert its own inconvenience as a reason to transfer the case." *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989). Moreover, Elliott's objection is counterbalanced by Sky Jet's claim that Chicago is more convenient because it is easier to reach by air than Rockford. It therefore appears that moving the

case to Rockford would only shift the inconvenience from Elliott to Sky Jet, which is no basis for transfer. *See, Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Second, Elliott has failed to identify what witnesses it intends to call or what their likely testimony would be. To show that the Western Division is "clearly more convenient," Elliott must "specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included." *Heller,* 883 F.2d at 1293. Though Elliott contends that the Western Division would be a more convenient forum for the witnesses in this case, it has offered only generalizations in support of this claim. On balance, the private interest factors do not support transfer.

### *3. Interests of Justice*

"In assessing which venue best serves the interests of justice, courts consider (1) the familiarity of the courts with the applicable law; (2) the speed at which the case will proceed to trial; and (3) the desirability of resolving controversies in the respective locales." *Bjoraker,* 2013 WL 951155, at *6 (citation omitted). However, these factors carry less weight in the case of intradistrict transfer. *Id.* (citation omitted). Elliott contends that the first two factors are neutral, but that the third factor supports transfer because its principal place of business is located in the Western Division and the aircraft was

serviced in the Western Division. As stated above, however, Moline is located in the Central District of Illinois. Because neither the landing gear inspection nor the crash occurred in this District, the Court concludes that the desirability of resolving the controversy locally is also neutral, and transfer would not serve the interests of justice.

Because Elliott has not carried its burden in showing that the Western Division is "clearly more convenient," its Motion to Transfer is denied.

**B. Motion to Dismiss**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014) (citation omitted). However, a court need not accept as true "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

Elliott argues that this Court should dismiss the negligence claims in Counts I and II because they are barred by the economic loss doctrine, a legal principle recognized in both Iowa and Illinois. As noted above, the contract between Elliott and Sky Jet contains a choice of law provision indicating that the rights and obligations of both parties are governed by Iowa law. Although Elliott initially argued that Sky Jet's claims are governed by Illinois law, it states on reply that it does not contest the application of Iowa law to the dispute. Accordingly, the Court will apply Iowa law.

The economic loss doctrine bars recovery in tort when a plaintiff has suffered only economic harm. *Am. Fire & Cas. Co. v. Ford Motor Co.,* 588 N.W.2d 437, 439 (Iowa 1999) (citation omitted). The purpose of the doctrine is "to prevent litigants with contract claims from litigating them inappropriately as tort claims." *Van Sickle Const. Co. v. Wachovia Commercial Mortg., Inc.,* 783 N.W.2d 684, 693 (Iowa 2010). Although the rule is often invoked in products liability cases, it also extends to contracts for services. *Annett Holdings, Inc. v. Kum & Go, L.C.,* 801 N.W.2d 499, 506 (Iowa 2011).

In determining whether recovery in tort or contract is available, Iowa courts consider "the nature of the defect, the

type of risk, and the manner in which the injury arose." *Determan v. Johnson,* 613 N.W.2d 259, 262 (Iowa 2000) (citation and internal quotations omitted). At minimum, however, "the damage for which recovery is sought must extend beyond the product itself." *Id.* (holding that plaintiff could not proceed on a negligence theory based on structural defects in her newly purchased home because any harm caused by the defects was to the house itself, not to other property).

Nevertheless, when other property damage results from "a sudden or dangerous occurrence," recovery in tort may be available. *Am. Fire,* 588 N.W. 2d at 439. In *American Fire,* an insurer brought a products liability suit against defendant Ford Motor Company after an insured's truck caught fire, damaging both the truck itself and its contents. *Id.* at 438. The Iowa Supreme Court drew a distinction between claims based on a product's failure to work properly, which sound in contract, and claims based on a sudden occurrence that endangers a person or property, which sound in tort. *Id.* at 439–440. The court explained this distinction through an example:

> If a fire alarm fails to work and a building burns down, that is considered an "economic loss" even though the building was physically harmed. It was a foreseeable consequence from the failure of the product to work properly. But if the fire was caused by a short circuit in the fire alarm itself, it is not economic loss.

*Id.* at 439 (citations omitted). Because a spontaneous truck fire was more "a danger than . . . a disappointment," the economic loss doctrine did not preclude the insurer's claims. *Id.* at 440.

Sky Jet argues that the economic loss doctrine does not apply in this case because an airplane crash, like an unexpected truck fire, is a sudden and dangerous occurrence. Sky Jet also alleges that other property was damaged in the crash apart from the landing gear — specifically, the cargo pod affixed to the Subject Aircraft, and "other property" in or near the Subject Aircraft. (Compl., ECF No. 1, ¶¶ 18, 22.) Elliott asserts that Sky Jet's claims merely arise from the landing gear's failure to perform, and that any damage to "other property" was a foreseeable consequence of malfunctioning landing gear. "Unlike the truck in *American Fire*," Elliott contends, "there was no sudden and calamitous defect in the landing gear that actively damaged the aircraft." (Elliott Reply, ECF No. 23, at 5.)

The Complaint provides few details about how the landing gear malfunctioned. It states only that "the Subject Aircraft's landing gear malfunctioned in flight," and that Subject Aircraft crash landed. (Compl, ECF No. 1, ¶ 14.) Discovery may enable Elliott to show that this malfunction was neither sudden nor dangerous, nor anything more than the landing gear's failure to perform properly. However, at this stage, the Court cannot make such a factual determination. Construing the allegations in the

light most favorable to Sky Jet, the Court finds that a landing gear malfunction may constitute a sudden or dangerous event, such that the economic loss doctrine does not apply to Sky Jet's negligence claims. *See, ExxonMobil Oil Corp. v. Amex Const. Co.*, No. 07C4278, 2008 WL 2168772, at *3 (N.D. Ill. May 23, 2008) (permitting negligence claim based on decoupled pipe to move forward under sudden or dangerous occurrence exception to Illinois' analogous economic loss doctrine). Likewise, the Complaint contains some allegations that other property besides the landing gear was damaged during the crash. Though Elliott may ultimately show that this property damage was foreseeable, Sky Jet has sufficiently alleged that the cargo pod and "other property" were harmed. Because Sky Jet has alleged facts that may render the economic loss doctrine inapplicable, Elliott's Motion to Dismiss is denied.

## IV. CONCLUSION

For the reasons stated herein, Elliot's Motion to Transfer [ECF No. 16], and to dismiss [ECF No. 14] are denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: January 29, 2016