IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SKY JET, M.G., INC.,

              Plaintiff,

      v.

ELLIOTT AVIATION, INC. and
ELLIOTT AVIATION OF THE
QUAD CITIES, INC.,

            Defendants.

Case No. 15 C 8113

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Sky Jet M.G., Inc. ("Sky Jet") sued Defendants, Elliott Aviation, Inc. ("Elliott") and Elliott Aviation of the Quad Cities, Inc. ("Quad Cities") (collectively, the "Defendants"), alleging negligence and breach of contract against Elliott (Counts I and III, respectively) and negligence against Quad Cities (Count II). After several months of discovery, Defendants moved for summary judgment on Count III and partial summary judgment on Counts I and II [ECF No. 39].

Defendants' Motion for Summary Judgment on Count III is granted in part and denied in part. Sky Jet's warranty claim is time-barred, but it may pursue a breach-of-contract claim for damages in excess of the repair or replacement value of the left landing gear. Defendants' Motion for Partial Summary Judgment on Count I based on the Contract's negligence disclaimer is granted

in part and denied in part.  The Contract limits liability for negligence but the facts do not establish, as a matter of law, that Sky Jet's recovery is limited to repair or replacement of the left landing gear.  The Court denies Defendants' Motion for Partial Summary Judgment on Counts I and II to the extent it is based on the absence of extra-contractual duties to Sky Jet.  The undisputed facts do not show that Quad Cities was a party to the Contract or is otherwise entitled to its negligence liability disclaimer.  Nor do the facts speak clearly as to Elliott's freedom from extra-contractual liability for Quad Cities' or its own potentially tortious conduct.

## I.  <u>BACKGROUND</u>

Sky Jet offers private aircraft charters throughout Quebec, Ontario, and the United States.  (ECF No. 41 ("Defs.' SOF") ¶ 2.) Elliott and its subsidiary company, Quad Cities, offer aviation-related services such as inspection, servicing, repair, and maintenance of aircraft and aviation components. (*Id.* ¶¶ 5-6.) Sky Jet entered into a contract with Elliott for maintenance of its Beech King Air 200 ("the Subject Aircraft").  (ECF No. 48 ("Pl.'s Resp.") ¶ 11-12.)  That contract was in the form of a quotation; Elliott prepared it on May 31, 2013, and Sky Jet accepted the terms by signing on June 4, 2013 ("the Contract"). (*Id.* ¶ 13.)  Under the Contract, Sky Jet agreed to pay $15,000 in

exchange for maintenance "overhaul" of its left and right landing gears, including removal and disassembly of the landing gear components, their actuators, and the gear box. (Pl.'s Resp., Ex. A, p.3.) The Contract either incorporates or expressly includes the following six (6) salient provisions:

In Flight Responsibilities

Customer agrees and understands that Customer is responsible for all claims, demands, suits, judgments, losses, damages, costs and expenses arising out of the inflight operation of the Aircraft, except to the extent that such claims, demands, suits, judgments, losses, damages, costs and expenses arise out of Elliott Aviation's negligence in performing Services, (as defined in the Proposal) on the Aircraft. Customer agrees that Elliott Aviation is not responsible for the pilots who operate the Aircraft regardless of who provides the pilot(s). Customer represents and warrants that it has procured insurance for the hull of the Aircraft and acknowledges that Customer is responsible for all damages to the hull of the Aircraft regardless of which party causes the damage to the hull. Upon request, Customer shall provide evidence of hull and liability insurance in a form satisfactory to Elliott Aviation.

Limitations of Liability

IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY LOSS OF USE OF THE AIRCRAFT OR LOSS OF PROFITS, DIMUNITION IN VALUE OR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOSSES, INCLUDING WITHOUT LIMITATION, ANY LOSS OR DAMAGE TO THE AIRCRAFT RESULTING FROM ANY FAILURE OR REFUSAL TO PERFORM CUSTOMARY RECOMMENDED OR REQUIRED STORAGE AND MAINTENANCE PROCEDURES ON ANY AIRCRAFT REMAINING OR HELD ON THE COMPANY'S PREMISES, UNLESS SPECIFICALLY AGREED IN WRITING. IN NO EVENT SHALL ANY ACTION BE COMMENCED AGAINST COMPANY MORE THAN ONE YEAR AFTER THE CAUSE OF ACTION WITH RESPECT TO WHICH THE CLAIM IS MADE HAS ACCRUED. In the event Elliott Aviation physically damages Customer's property, Customer's sole and

exclusive remedy, and Elliott Aviation's sole and
exclusive liability, is limited to the repair or
replacement (at Elliott Aviation's option) of the
damaged portion of the property.

Warranty and Disclaimers

The "Statement of Warranty" of the Company in effect as
of the date of this Work Authorization shall govern the
work. A copy has been provided to Customer, or will be
provided to Customer, upon request. THE STATEMENT OF
WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER EXPRESS
AND IMPLIED WARRANTIES WHATSOEVER, INCLUDING, BUT NOT
LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND
FITNESS FOR A PARTICULAR PURPOSE. Any repair or
replacement shall be performed at an Elliott Aviation
facility and Customer shall be responsible for
transportation costs.

Scope of Warranty

This warranty and the liability of Elliott Aviation for
breach of warranty shall be limited to correcting or
repairing such portions of the Work that is [*sic*] not in
accordance with the Aircraft Work Authorization or
Specifications. Elliott Aviation warrants only that the
Work shall be free from defects under normal aircraft
use. Elliott Aviation's obligations under this
Warranty, and Owner's exclusive remedy, shall be limited
solely to the repair, or replacement, at Seller's
election, of any workmanship which is determined to be
defective under normal use and service within the
earliest to occur of three hundred (300) hours of
aircraft operation or one (1) year after completion of
the Work (the "Warranty Period").

Right to Subcontract. Elliott Aviation has the right to
subcontract any Service to any subcontractor properly
certified and rated by the Approved Aviation Authority.

Assignment. This Agreement may not be assigned without
the prior written consent of the other party, except
that your consent will not be required for an assignment
by us to one of our affiliates.

(Pl.'s Resp. ¶¶ 17-20 & Ex. A, p.5.)

Quad Cities, not Elliott, performed the maintenance and certified on June 19, 2013 that the Subject Aircraft was in airworthy condition and that all work was performed in conformance with applicable manufacturing maintenance manuals. (ECF No. 50, "Defs.' Resp.," ¶ 4.) Only Quad Cities provided any work, testing, or services on the Subject Aircraft. (*Id.* ¶ 3.)

On September 22, 2014, the Subject Aircraft's left landing gear malfunctioned in flight, forcing the pilots to land it with only partial landing gear assistance. (Pl.'s Resp. ¶ 16.) In addition to that affecting the landing gears, the Subject Aircraft sustained other damage upon landing. (*Id.*)

Sky Jet filed suit against Defendants on September 15, 2015, claiming that Elliott and Quad Cities "breached the duty owed to Sky Jet to use reasonable care in the inspection, servicing, repairing, and maintenance of the Subject Aircraft and its component parts and assemblies." (ECF No. 1, "Compl.," ¶¶ 17, 21.) Specifically, Sky Jet alleged that Defendants negligently and carelessly inspected, serviced, repaired, and maintained the Subject Aircraft's landing gear systems, assemblies, actuators, gearbox, and motor; negligently and carelessly certified the Subject Aircraft as airworthy; and negligently violated FAA regulations, the instructions provided with the aircraft manufacturer's maintenance manual, and other industry standards

and customs. (*See, id.*) Sky Jet's breach of contract claim against Elliott includes similar allegations plus an additional assertion that Elliott failed to "comply with other express warranties." (*Id.* ¶ 27.)

In terms of damages, Sky Jet seeks recovery for "property damage to the Subject Aircraft, to a cargo pod affixed to the Subject Aircraft, and to other property in or near the Subject Aircraft; diminished value of the Subject Aircraft; loss of revenues and profits; loss of good will; damage to business reputation; loss of the use of the Subject Aircraft and other aircraft; investigation, maintenance, and recovery costs; and other damages as allowed by law." (Compl. ¶ 18; *see, id*. ¶¶ 22, 28.) Sky Jet does not distinguish among its counts with respect to the types of damages sought.

## II.  <u>LEGAL STANDARD</u>

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most

favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). The Court does not make credibility determinations as to whose story is more believable. *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704 (7th Cir. 2011). It must consider only evidence that can be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The party seeking summary judgment bears the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine,* 605 F.3d 451, 460 (7th Cir. 2010); *see, also, Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If this burden is met, then the adverse party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256.

### III. ANALYSIS

In their memorandum of law, Defendants argued that (i) Elliott is entitled to summary judgment on Count III because Sky Jet's breach of contract and warranty claims are time-barred; (ii) they are entitled to partial summary judgment on the negligence counts because the Contract limits Sky Jet's recoverable damages to repair or replacement of the left landing gear; and (iii) they are entitled to partial summary judgment on the negligence counts

because they sound in contract and do not allege any extra-contractual duty owed to Sky Jet.

In response, Plaintiff contended that (i) the breach of contract cause of action is timely because, under the discovery rule, it accrued when the aircraft crashed, not when the work was performed; (ii) the limitation of liability does not apply to Elliott's own negligence; and (iii) it never agreed to any limitation of the liability of Quad Cities.

Defendants then filed a reply, arguing that (i) Sky Jet's contractual agreement to a one-year limitations period dooms its breach of contract claim, and Sky Jet's failure to plead the discovery rule bars its application; (ii) the Contract limits Sky Jet's recoverable damages because Elliott assigned the contract to Quad Cities; and (iii) the limitation of liability provision of the Contract applies to both of Sky Jet's negligence claims, and Defendants did not owe any extra-contractual duties to Sky Jet anyway.

The Court granted Sky Jet leave to file a sur-reply to address these arguments. In its sur-reply [ECF No. 55], Sky Jet argued that (i) Defendants have not carried their burden of showing that the Contract was in fact assigned to Quad Cities; and (ii) if indeed Elliott established an assignment of the Contract

to Quad Cities, then Elliott is not entitled to summary judgment on Sky Jet's claims against it.

## A.  The Limitations Periods

### 1.  Breach of Warranty

The Court grants Defendants' Motion as to Sky Jet's claim for breach of warranty.  Although *Brown v. Ellison,* 304 N.W.2d 197 (Iowa 1981), *rev'd on other grounds, Franzen v. Deere and Co.,* 334 N.W.2d 730 (Iowa 1983), establishes that the discovery rule may apply to causes of action arising from express and implied warranties, its application is not unbounded.  The parties may agree by contract to a limited express warranty whose terms otherwise preclude application of the rule.

Here, the Scope of Warranty provision incorporated into the Contract explicitly grants Sky Jet the remedy of repair or replacement of "any workmanship which is determined to be defective" within the Warranty Period.  It defines the "Warranty Period" as "the earliest to occur of three hundred (300) hours of aircraft operation or *one (1) year after completion of the Work*." (Defs.' SOF, Ex. 1, ¶ 2 (emphasis added).)  This warranty provision "is exclusive and in lieu of all other express and implied warranties."  (Pl.'s SOAF, Ex. A, p.5.) Thus, the parties unambiguously and explicitly agreed that Sky Jet would have recourse only to a limited express warranty whose term is defined

in relevant part by "completion of the Work." The parties do not dispute that the landing gear was "determined to be defective" more than one year after completion of the maintenance. Because Sky Jet only asserts a claim under "other express warranties," the question is whether the discovery rule should effectively extend the "Warranty Period" beyond the term delimited by its express language.

The cases Sky Jet cites do not support applying the discovery rule to the Contract's express limited written warranty. First, *Brown* concerned an oral contract and an implied warranty arising therefrom. *Brown,* 304 N.W.2d at 201. Here, there is no implied warranty, but rather a written contract containing an express limitation on its warranty's term to one year from completion of the work. Contracting around what may have otherwise been the *Brown* default rule is of a piece with *Brown*'s caveat that the discovery rule, even in cases arising from express and implied warranties, "does not apply to situations in which statutes expressly provide that a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Brown,* 304 N.W.2d at 201. The Court is unwilling to recognize the ability of statutes to abrogate the discovery rule while simultaneously finding that commercial parties may not.

Similarly, *Speight v. Walters Develop. Co., Ltd.,* 744 N.W.2d 108 (Iowa 2008), involved the implied warranty of workmanlike construction. Applying the discovery rule to determine when the cause of action accrued, the court in that case stressed that "the implied warranty of workmanlike construction is a judicial creation and does not, in itself, arise from the language of any contract between the builder-vendor and the original purchaser." *Id.* at 114. The Court does not understand how this rationale supports extending the rule to an express warranty arising from term-limiting language in a contract between two commercial parties. In fact, the court in *Speight* analyzed the implied warranty claim against the backdrop of the applicable repose statute, which "terminate[d] any right of action after a specified time has elapsed, regardless of whether or not there has as yet been an injury." *See, id.* at 115 (internal quotation marks omitted). Just as such statutes exempt a warranty claim from the discovery rule – making them "begin[] to run on the date of the act or omission causing the injury" - so too can parties condition an express warranty's term on the passage of a set amount of time.

Consider a relevant airplane maintenance case. In *Crowley v. New Piper Aircraft Corp.,* No. LALA002464, 2006 WL 3059914 (Iowa Dist. Ct. Aug. 23, 2006), the parties contracted on the basis of term-limited express written warranties. The court formulated the

cause of action for breach of an express warranty as follows: the plaintiff "must prove that (1) an express warranty was created; (2) the Aircraft did not conform to the warranty; (3) *the defects appeared before the warranties' expiration*. . . ." *Id.* at *17. It was undisputed that the contract expressly "warranted the repair of the Aircraft's engines for a time period of no more than two years." *Id.* The court held for the defendants, noting that "even if the Aircraft was found not to conform to Defendants' warranties, the warranties have expired." *Id.* at *18. While it was "undisputed that the Aircraft leaks oil, there is no evidence that said oil leaks occurred *during the warranty period*." *Id.* (emphasis added). As such, the court held that there was no genuine issue of material fact that the warranties expired prior to manifestation of the problems. *See, id.* Such is the case here.

Therefore, the discovery rule in Iowa does not necessarily apply to every warranty claim, particularly where the terms of an express warranty clearly provide otherwise. Likewise for implied warranties, statutes of repose such as the one at issue in *Speight* can link the date on which a cause of action accrues to the wrongful conduct giving rise to the claim for breach. And, as with other contractual provisions, the parties "may agree to a modification" of what otherwise would constitute a default rule

such that recovery turns on defects manifesting within an agreed period of time. *Robinson v. Allied Prop. & Cas. Ins. Co.,* 816 N.W.2d 398, 402 (Iowa 2012). The language of the warranty indicates that such was the case here. The parties – both sophisticated commercial entities - entered into a contract with their eyes open and effectively set an explicit warranty "repose" period keyed, as relevant, to the passage of one year from completion of the work.

Because it is undisputed that the landing gear did not malfunction until more than one year after Quad Cities completed and certified the landing gear maintenance work, Elliott is entitled to summary judgment on Plaintiff's Count III to the extent it invokes the Contract's limited express warranty.

## 2. Breach of Contract

That the landing gear malfunctioned over one year after Quad Cities completed the maintenance work does not, however, dispose of Sky Jet's breach of contract claim. Determining whether the discovery rule applies to Sky Jet's breach of contract claim is a different animal, because the parties do not appear in this case to have contracted around the relevant default rule. Rather, the limitations period in the Contract commences when the cause of action "has *accrued*." (Defs.' SOF, Ex. 1, p.5 (emphasis added).) Without defining that term for themselves, the parties and the

Contract rely on state law to determine when a cause of action accrues.

*a.  Accrual of the Cause of Action*

Under Iowa law, the general rule is that "a cause of action accrues and the limitations period begins to run when the contract is breached, not when the damage results or is ascertained." *Brown,* 304 N.W.2d at 200 (citation omitted).  If the discovery rule applies, however, the cause of action does not accrue until the alleged breach was discovered or reasonably should have been discovered. *Id.*  As explored above, Iowa courts have applied the discovery rule to certain warranty claims based on breach of contract.  But it does not appear that they have explicitly extended the discovery rule to a written contract where the non-breaching party was unable to ensure satisfactory performance within a limitations period linked to the timing of the wrongful conduct.

First, it is worth noting that the rationale in *Brown* for extending the discovery rule to certain warranty cases favors applying it to contracts such as the one at issue here.  Sky Jet had no ability to know or even a reason to inquire whether maintenance was improperly performed until the accident occurred. *See, Brown,* 304 N.W.2d at 201 ("[T]he buyer is in a position of inferior knowledge similar to that of a client or

patient. . . ."). Nor does the record indicate that Sky Jet, as a charter airplane company, had particular expertise in proper landing gear maintenance.

Second, other states have applied the discovery rule to such "inherently unknowable" breaches. *See, e.g., Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.,* 560 N.E.2d 122, 126 (Mass. App. 1990); *Bacon and Asscs., Inc. v. Rolly Tasker Sails (Thailand) Co., Ltd.,* 841 A.2d 53, 64-65 & n.13 (Md. App. 2004) ("[T]he Legislature, in employing the word 'accrues' . . . never intended to close our courts to plaintiffs inculpably unaware of their injuries.") (citation omitted). Indeed, "the reasons behind the discovery rule may support [its] application regardless of how an action is characterized." *Hermitage Corp. v. Contractors Adjustment Co.,* 651 N.E.2d 1132, 1136 (Ill. 1995) (summarizing application of the discovery rule to actions arising from contract that could be characterized as torts). An injured party may be unaware of an injury and its wrongful cause "whether the action is deemed to involve tort, tort arising from contract, or other breach of contractual duty." *Id.* (citations omitted).

The Court credits the case-sensitive approach of the Illinois Supreme Court as best harmonizing with extant Iowa law. It allows for an evaluation of whether the facts of a particular case involve inherently unknowable injuries for which redress was

otherwise diligently pursued. This seems to alleviate the specter, invoked by courts declining to apply the discovery rule in contract cases, of "stale and fraudulent claims." *CLL Assocs. Ltd. Partnership v. Arrowhead Pac. Corp.,* 497 N.W.2d 115, 117, 122 (Wis. 1993) (stressing the need to protect defendants). And the flexibility of the Illinois approach is consistent with *Brown*'s rationale for tolling the limitations period on certain contract and warranty claims where plaintiffs possess asymmetric information or reasonably rely on a service provider.

In this case, the Court does not believe that Sky Jet is pursuing Defendants on the basis of stale or fraudulent claims. Rather, the facts of this case involve inherently unknowable injuries arising from breach of a contract that Sky Jet entered into *precisely because* it did not possess relevant subject-matter expertise. Sky Jet had no practicable means of detecting a breach of contract within one year from the date the work was performed – when, under Defendants' interpretation, the contractual limitations period expired. It was just three months later that the crash occurred, and Sky Jet then filed its Complaint within one year. These undisputed facts suggest that Sky Jet was not trying to mulct Defendants in damages but was instead hewing to a colorable reading of the Contract's limitation of liability to causes of action brought within one year of their "accrual."

Therefore, the Court finds that Iowa courts would likely apply the discovery rule to Sky Jet's breach of contract claim.

### b. *Pleading the Discovery Rule*

Citing a hodgepodge of cases, Defendants argue that Sky Jet has waived its right to invoke the discovery rule because "it did not claim application of the discovery rule in its complaint." (Defs.' Reply at 2.) Defendants appear to fault Sky Jet for not pleading to the effect that it did "not reasonably discover[]" the defect until the crash. (*Id.* at 2-3.) Defendants do not point to any resulting prejudice flowing from Sky Jet's oversight, and Sky Jet does not directly confront this argument.

There is some authority for Defendants' general proposition that the party pleading an exception to the normal limitations period has the burden both to plead and prove the exception. *See, e.g., Cornell v. State,* 529 N.W.2d 606, 610 (Iowa 1994) (holding in a criminal proceeding that a party claiming an exception to the normal limitations period must by "general pleading" invoke the exception, "and it must be accepted as true when challenged by a motion to dismiss"); *Franzen,* 334 N.W.2d at 732 (holding on appeal of the defendant's motion to dismiss that "[t]he party pleading an exception to the normal limitations period has the burden to plead and prove the exceptions") (citing *Brown,* 304 N.W.3d at 200); *Brown,* 304 N.W.2d at 200 (noting that the trial court applied the

discovery rule as an exception but held after presentation of evidence that the Browns waited too long from the time they discovered their injury to file their claim).

Yet, as these cases themselves suggest, the pleading and proving requirements are typically not applied in tandem. Instead, Iowa courts tend to analyze the "pleading" prong upon a motion to dismiss and the "proving" prong at summary judgment or after presentation of evidence. After discovery and/or presentation of evidence, the focus is not on the form of the complaint but on whether the plaintiff has proven facts supporting an exception to the normal limitations rule. *See, e.g., Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 1 (Iowa 1984) ("A party asserting an exception to the expiration of a limitations period has the burden of proving the exception.") (appeal after judgment) (*citing Brown,* 304 N.W.2d at 200); *Jacobson v. Union Story Trust and Sav. Bank,* 338 N.W.2d 161, 164 (Iowa 1983) ("Since the plaintiffs failed to support their relation back claim with any facts . . . , the trial court correctly granted the defendant bank summary judgment on the ground that suit was barred by the statute of limitations.") (citing *Brown,* 304 N.W.2d at 200); *Bennett v. Johnson,* 485 N.W.2d 481, 483 (Iowa App. 1992) ("A party asserting an exception to the expiration of a limitation period has the burden of proving the exception.") (appeal from summary judgment).

Interpreting Iowa law, the Eighth Circuit adopted a similar approach, focusing not on the technical language of the pleadings but on whether the undisputed facts support summary judgment. *See, Kraciun v. Owens-Corning Fiberglas Corp.,* 895 F.2d 444, 446 (8th Cir. 1990) ("In responding to defendants' summary judgment motion, plaintiffs are thus required to point to specific facts showing there is a genuine issue for trial concerning when their causes of action accrued.") (citations omitted). The court went on to hold that summary judgment is appropriate "if a reasonable jury could *only* conclude, viewing the facts in the light most favorable to the plaintiffs, that plaintiffs knew or through reasonable investigation should have known they were suffering" the injury prior to the end of the normal limitations period. *Id.* at 447.

Thus, a Rule 12(b)(6) motion would have been a more proper vehicle for challenging Sky Jet's technical failure to plead reasonable discovery language. (The Court does not opine on the prospects for success of such a motion.) Moreover, there is no evidence before the Court suggesting that Defendants have been prejudiced by Sky Jet's technical failure to plead discovery rule language. As such, the Court finds that, irrespective of how Sky Jet worded its Complaint, the record evidence does not compel a finding in favor of Defendants that Sky Jet could have discovered the alleged maintenance defects with reasonable diligence.

\*     \*     \*

Because all reasonable inferences are drawn in favor of Sky Jet (the non-movant), the undisputed facts support a finding that Sky Jet did not discover and could not reasonably have discovered the defect until the day of the crash. The discovery rule therefore tolls the one-year limitations period such that the action, filed within one year of the crash, is timely. Defendants' Motion for Summary Judgment as to the contract claim in Count III is denied.

## B. The Limitation of Contractual Liability

The first provision of the Contract's Limitations of Liability section states that "in no event shall Company be liable for . . . consequential damages." The second relevant piece is its last sentence, which provides that "[i]n the event Elliott Aviation physically damages Customer's property, Customer's sole and exclusive remedy, and Elliott Aviation's sole and exclusive liability, is limited to the repair or replacement (at Elliott Aviation's option) of the damaged portion of the property." Defendants allege that Sky Jet's recovery under the Contract is accordingly limited to "repair or replacement of the damaged portion of the property, here, the left landing gear." (Defs.' Mem. at 6-7.)

In *Gosiger, Inc. v. Elliott Aviation, Inc.,* 823 F.3d 497 (8th Cir. 2016), the Eighth Circuit considered this exact language in a factual setting somewhat distinct from the one here. There, the plaintiff sued because, "[w]hile servicing Gosiger's aircraft on the ground, Elliott Aviation cut the right wing," Elliott then repaired it, and "Gosiger wanted compensation for diminution in value of the aircraft." *Id.* at 500. The court held that the Limitations of Liability section "immediately limits the remedies available, specifically limiting Elliott's liability to 'repair or replacement' and expressly disallowing 'DIMINUTION IN VALUE' damages or losses." *Id.* at 501. Defendants argue that *Gosiger* dooms Sky Jet's claim for damages beyond the scope of the Contract, which includes, *inter alia,* a plea for recovery of the "diminished value of the Subject Aircraft."

The Court agrees with Defendants that the Limitations of Liability section forecloses Sky Jet from recovering under the Contract diminution in value of the Subject Aircraft and other special, consequential, incidental, and loss-of-use damages. This is of a piece not only with *Gosiger* but also with *Boone Val. Co-op Processing Ass'n v. French Oil Mill Mach. Co.,* 383 F.Supp. 606, 609-612 (N.D. Iowa 1974).

However, Defendants have not shown as a matter of law that the Contract precludes Sky Jet from recovering all expectation or

compensatory damages in excess of repair or replacement of the left landing gear. The provision integral to Defendants' desired limitation on Sky Jet's contractual recovery is the final provision of the Limitations of Liability section, which limits a customer's recovery to repair or replacement of "the damaged portion of the property," but only "[i]n the event Elliott Aviation *physically damages Customer's property*." (Pl.'s SOAF, Ex. A, p.5 (emphasis added).) It is not clear as a matter of law that the provision covers the rather attenuated "damage" here, which according to Sky Jet traces to Quad Cities improperly swapping left and right landing gear components. Indeed, Quad Cities' certification of the work suggests that it did not consider the maintenance to have produced any physical damage, and any damage to the left landing gear manifested only after a lengthy incubation period including scores of takeoffs and landings.

Further, whenever Sky Jet used the word "damage" in its complaint, it was to stress that the *crash* "cause[d] extensive damages." (*See, e.g.,* Compl. ¶¶ 14, 18, 22, 28.) This is consistent with Sky Jet's persistent characterization in the summary judgment briefs that various aspects of its property "were damaged during the crash." (*See, e.g.,* Pl.'s SOAF ¶ 7.) Of course, Defendants' negligence and Elliott's breach of contract

are alleged to be the proximate cause of the crash.  But the facts
before the Court are not amenable to a reading that faults either
Elliott or Quad Cities for "physically damaging" the landing gear
or the other impacted parts of the Subject Aircraft.  Further, the
parties seem to agree that the damages to the Subject Aircraft
arose "out of [its] in-flight operation," as their invocations of
the Contract's "In Flight Responsibilities" section suggest.
*Gosiger,* on the other hand, exclusively concerned the "On Ground
Responsibilities" provision, which conceptually is more compatible
with "physically damaging" property during maintenance.  *See,* 823
F.3d at 500-01; *Gosiger*, *Inc. v. Elliott Aviation, Inc.,* No. 4:13-
cv-477, 2015 WL 11070982, at *4 (S.D. Iowa Mar. 17, 2015).

Put another way, it is not clear as a matter of law that the
"physically damages" provision is co-extensive with notions of
proximate cause (*i.e.,* legal damages).  To the extent the Eight
Circuit found that provision unambiguous as applied to Elliott's
"cutting" of the plane's wing on the ground, its application to
the inchoate and more remote damage here is uncertain.

Thus, the Court grants in part Defendants' Motion for Partial
Summary Judgment on Count III as to Elliott's non-liability for
the damages defined in the first sentence of the Limitations of
Liability provision.  However, it denies partial summary judgment

on the issue of limiting Sky Jet's contractual recovery to repair
or replacement of the left landing gear.

## C. Assignment

Defendants argue in their Reply brief that Sky Jet's claim
for negligence, presumably against Elliott, is limited because
Elliott assigned the Contract to Quad Cities. (*See,* Defs.' Reply
at 4.) Based on the undisputed facts that Quad Cities is a
subsidiary of Elliott and solely performed the work on and
certified the Subject Aircraft, "it is evident that Elliott
Aviation, Inc. assigned the Contract to Elliott Aviation of the
Quad Cities, Inc." (*Id.*) Sky Jet argues, on the other hand, that
Quad Cities was not a party to the Contract and should not be
entitled to any of its benefits, such as limited liability, that
are expressly conferred on Elliott. (*See,* Pl.'s Resp. at 9.)

The Contract reserves to Elliott the right to subcontract the
work to "any subcontractor properly certified and rated by the
Approved Aviation Authority." (Pl.'s SOAF, Ex. A, p.5.) It also
grants Elliott the right to assign the Contract "to one of our
affiliates" without Sky Jet's consent. (*Id.*) "When there is an
effective assignment, the assignee assumes the rights, remedies,
and benefits of the assignor, and the assignment transfers the
entire rights under a contract from the assignor to the assignee
so that the assignee assumes not only the benefits of the

contract, *but also the rights and remedies.*" *Pillsbury Co., Inc. v. Wells Dairy, Inc.,* 752 N.W.2d 430, 435 (Iowa 2008) (emphasis in original) (internal citations and quotation marks omitted).

Defendants have not shown an effective assignment because they have introduced neither documentation nor testimony evidencing that the Contract was assigned. The court in *Pillsbury*, for example, "analyze[d] the relevant portions of the Contribution and Assumption Agreement . . . to determine whether . . . Pillsbury assigned its interest in this action." *Id.* at 436. Here, however, Defendants nakedly assert that the contract was assigned purely based on Quad Cities' singular role in performing the work and certifying the Subject Aircraft as airworthy. Yet these facts are equivocal, just as consistent with Elliott merely subcontracting the work to Quad Cities rather than assigning the entire Contract.

The Court denies Defendants' Motion to the extent it seeks to invoke assignment to limit Sky Jet's recovery on any count.

### D. The Negligence Claims

Defendants contend that the Contract's Limitations of Liability section similarly constrains Sky Jet's ability to recover for Defendants' alleged negligence. Defendants alternatively argue that, even if the Contract does not limit recovery for negligence, Sky Jet was owed no extra-contractual

duty of care, and thus "the acts complained of stem from Defendants' performance of the Contract" such that tort recovery is precluded. (Defs.' Mem. at 9.) In response, Sky Jet claims that the asserted provision of the Contract does not exculpate Defendants from liability for their own negligence, particularly when read against the "In-Air Responsibilities" clause of the Contract. (Pl.'s Resp. at 5-8.) Sky Jet does not appear to respond to Defendants' argument that they owed no extra-contractual duties whose breach would trigger tort liability.

### 1. Construction of the Disclaimer

It is permissible under Iowa law for a contractual disclaimer to limit liability for negligence. *See, e.g., Northern Nat. Gas Co. v. Roth Packing Co.,* 323 F.2d 922, 928 (8th Cir. 1963). When interpreting a provision exculpating one party from liability for damages, such as the Limitations of Liability section of the Contract, courts do not include within its sweep "negligence by the offending party unless such intent is clearly disclosed." *Connor v. Thompson Const. & Dev. Co.,* 166 N.W.2d 109, 112 (Iowa 1969) (citation omitted); *see, also, Baker v. Stewarts' Inc.,* 433 N.W.2d 706, 709 (Iowa 1988); *Evans v. Howard R. Green Co.,* 231 N.W.2d 907 (Iowa 1975). A contract is read and interpreted as an entirety rather than seriatim by clauses. *Connor,* 166 N.W.2d at

112; *Archibald v. Midwest Paper Stock Co.,* 148 N.W.2d 460, 463 (Iowa 1967).

In contrast to disclaimers held to be mute on negligence liability, the Limitations of Liability section does not include language confining its application to claims under the Contract. *See, e.g., Berwind Corp. v. Litton Indus., Inc.,* 532 F.2d 1, 6-7 (7th Cir. 1976) (emphasizing that the limiting language appeared under the heading "Warranty" and recited that "liability *under this contract* is limited") (emphasis added); *Boone,* 383 F.Supp. at 613 ("The Court's conclusion [that the contractual limitation of consequential damages does not apply to independent tort actions] is buttressed by the fact that the contract language in issue merely purports to waive defendant's liability '*under this contract*' for consequential damages.") (emphasis added). Rather, the immediately prior section of the Contract unequivocally outlines Elliott's culpability for "negligence in performing Services": as relevant, Elliott is responsible for damages arising out of the in-flight operation of the Subject Aircraft to the extent they "arise out of Elliott Aviation's negligence in performing Services." The Limitations of Liability section simply fixes the magnitude of negligence liability.

Further language in the Contract's damages disclaimer makes clear that it embraces claims based on negligence. The

categorical prefatory language of the Limitations of Liability section – that "in no event" shall Elliott be liable for certain types of damages – suggests the broadest possible application. Iowa courts agree. For example, in *Iowa Elec. Light & Power Co. v. Allis-Chambers Mfg. Co.,* 360 F.Supp. 25, 33 (N.D. Iowa 1973), the contract at issue excluded the drafter's liability for consequential damages "in any event" and referred to liability in contract or tort. Similarly, in *Fire Ass'n of Philadelphia v. Allis-Chambers Mfg. Co.,* 129 F.Supp. 335, 352-56 (N.D. Iowa 1955), the contract excluded consequential damages "in any event," and the court found that this clearly encompassed negligence claims. "[I]t is not necessary that the parties make use of the word 'negligence' in a provision in order to make the provision applicable to a party's own negligence." *Id.* at 355 (finding it "sufficient if the parties by 'apt language' include such negligence"). The thumb on the scale of the non-drafter cannot overcome the clear weight of case law authorizing disclaimers of liability of the sort at issue here – where the drafter used all-embracing "in no event" language immediately after stating the circumstances under which it would bear responsibility for negligence.

Besides, the Court is not writing on a blank slate. The district court in *Gosiger,* interpreting identical language, held

that "Elliott Aviation is responsible for damages caused by their negligence, however the remedy provided to Plaintiff is limited." 2015 WL 11070982 at *4. Thus, "[t]he 'Limitations of Liability' provision limits the amount of damages that can be claimed due to the negligent actions of Defendant." *Id.* at *6. Similarly, the Eighth Circuit, affirming the district court, noted that the "Responsibilities" section "describe[s] the parties' responsibilities. But the 'Limitations of Liability' section immediately limits the remedies available. . . ." 823 F.3d at 501. The Contract expressly disclaims certain remedies for contract *and* negligence claims: loss-of-use damages, lost profits, losses due to diminution in value, and any "special, incidental or consequential damages" (to the extent these terms have force in a tort action). (For the same reasons discussed above, however, the Court is unwilling to find as a matter of law that Sky Jet's recovery in negligence is limited to repair or replacement of the left landing gear. The Court's holding is consistent with the reasoning of both the lower court and the Eighth Circuit in *Gosiger,* but nonetheless permits Sky Jet at trial to adduce evidence of damages that fall outside the proscribed categories to the extent it can make out an independent tort claim.)

The Court rejects Defendants' attempt to advocate for their desired repair-or-replacement remedy by pointing to the hull

insurance requirement contained in the "In Flight Responsibilities" clause of the Contract. The Court draws all inferences at summary judgment in favor of the non-moving party, and, without more, it will not read the Contract's requirement for hull insurance as sufficient undisputed "eviden[ce] that the parties contemplated limiting both Defendant's liability, and Sky Jet's remedies in their contract negotiations." (Defs.' Mem. at 9.) Neither party submitted a hull insurance policy to the Court, making it impossible to determine whether the contemplated policy – or even a typical policy – covers the damages Sky Jet seeks. Any inferences from the hull insurance requirement are drawn in favor of Sky Jet (the non-movant), and so the Court finds the asserted language in the Contract insufficient to preclude a genuine issue of material fact on the remedy afforded Sky Jet.

Finally, specific to Count II, Defendants have made no showing that Quad Cities may invoke the Contract's limitation of negligence liability. They have not introduced facts showing an effective assignment of the Contract to Quad Cities (*see, supra,* Section III.C), nor have they shown that the terms "Elliott Aviation" or "Company" unambiguously include Quad Cities. The inferences from the undisputed facts clearly support a reasonable jury finding in favor of Sky Jet as to the alleged negligence of Quad Cities.

Therefore, the Court grants in part Defendants' Partial Summary Judgment Motion on Count I, finding that the Contract, as relevant, effectively limited liability for tort damages to the same extent as contract damages. It denies the analogous Partial Summary Judgment Motion as to Count II, because there is no record evidence showing that Quad Cities is covered by or entitled to – via assignment or otherwise - the Contract's liability disclaimer.

The Court feels compelled to make an additional observation. The parties do not dispute that only Quad Cities performed maintenance work on the Subject Aircraft and that only Quad Cities certified it as airworthy. The negligence allegations in Count I of Sky Jet's Complaint charge Elliott with negligence in, *inter alia,* inspecting, maintaining, and certifying the Subject Aircraft and with negligence in failing to comply with FAA regulations and other industry standards. Therefore, had Defendants moved for summary judgment on Count I (rather than partial summary judgment) on the basis of Elliott's lack of participation in any actual maintenance services, the Court might well have obliged. However, absent briefing from the parties directed to this issue, the Court will not *sua sponte* grant summary judgment on Count I. The parties may separately argue this issue or introduce admissible evidence directed to this issue at trial.

## 2. *Extra-Contractual Duties Supporting a Tort Action*

The question remains whether evidence in the record allows Sky Jet to survive summary judgment on whether Defendants owed and breached an extra-contractual duty. Sky Jet does not directly respond to Defendants' argument that all the acts of which it complains derive from breach of the Contract. "Only where a duty recognized by the law of torts exists between the plaintiff and defendant distinct from a duty imposed by the contract will a tort action lie for conduct in breach of the contract." *Preferred Marketing Asscs. Co. v. Hawkeye Nat. Life Ins. Co.,* 452 N.W.2d 389, 397 (Iowa 1990); *see, Haupt v. Miller,* 514 N.W.2d 905, 910 (Iowa 1994). Thus, the question is whether, in light of the facts presented, a reasonable jury could find that Defendants breached any duties that would give rise to an independent tort claim. Although Defendants have spilled considerable ink denying the existence of any extra-contractual duty, the Court finds the record insufficiently developed to support granting partial summary judgment on this basis.

This argument cannot support a grant of partial summary judgment to Quad Cities. Defendants have not shown that Quad Cities was ever in privity with Sky Jet or contemplated by the defined term "Company," was a party to an effective assignment, or is otherwise entitled to the Contract's limitation of negligence

liability. (*See, supra,* Section III.D.1.) Thus, there is no evidence that Quad Cities owed *any* contractual duties directly to Sky Jet. Further, instead of arguing that Sky Jet was a third-party beneficiary of an agreement between Elliott and Quad Cities (such that contractual duties running from Quad Cities to Elliott could somehow straitjacket Sky Jet into a contract-based remedy), Defendants conclusorily and unpersuasively state that Elliott assigned the entire Contract to Quad Cities. Even if a subcontracting agreement governed the relationship between Defendants, contractual duties running from Quad Cities to *Elliott* do not necessarily affect Sky Jet's ability to recover from Quad Cities for negligence. *See, e.g.,* W. Prosser, Law of Torts § 93, at 622 (4th ed. 1971) ("[T]he absence of 'privity' between the parties makes it difficult to found any duty to the plaintiff upon the contract itself. But by entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured."). Simply put, drawing inferences in favor of Sky Jet on the summary judgment record supports characterizing each and every duty Quad Cities owed to Sky Jet as, in Defendants' cant, "extra-contractual."

With respect to Elliott, the Court is similarly unprepared to grant partial summary judgment. As explored above, the only "evidence" Defendants have marshaled in support of a contractual assignment is just as consistent with Elliott's subcontracting the work to Quad Cities. And the record is insufficiently developed for the Court to find as a matter of law that Elliott bore no vicarious responsibility for the negligent acts of Quad Cities. Nothing in the record speaks to whether Quad Cities was a *bona fide* independent contractor to whom Elliott subcontracted the maintenance work – a question best left for the jury's resolution after full presentation of relevant evidence. *See, e.g., Criterion 508 Sol'ns, Inc. v. Lockheed Martin Servs., Inc.,* 806 F.Supp.2d 1078, 1090 (S.D. Iowa 2009) (citing *Pippert v. Gunderson Clinic, Ltd.,* 300 F.Supp.2d 870, 877 (N.D. Iowa 2004)). The key factors are control over work, payroll arrangements, the type of contract at issue, and other considerations such as third-party representations. *See, Criterion,* 806 F.Supp.2d at 1090-92. Here, neither Sky Jet nor Defendants have introduced evidence directed to these factors. Only where all evidence points to one side and "there is no rational basis for reasonable minds to differ as to [the] status of [the] servant," is the issue open "for the court to resolve." *Watland v. Walton,* 410 F.2d 1, 3-4 (8th Cir. 1969). Such is clearly not the case here.

Further, and equally applicable in the event Quad Cities *can* invoke the Contract to govern its relationship with Sky Jet, the record at this stage permits a finding that Defendants breached an independent, extra-contractual duty to Sky Jet. For example, a reasonable jury drawing inferences in Sky Jet's favor could infer a relationship between (a) Sky Jet's unrebutted allegations that Defendants violated FAA regulations and (b) the undisputed fact that the Subject Aircraft's landing gear malfunctioned in flight, necessitating a touchdown with only partial landing gear assistance. Because Iowa courts have not squarely addressed this precise variant of negligence *per se,* the Court arrives at this determination by analyzing relevant Iowa precedent and persuasive authority.

First, a word about the general framework of negligence *per se* is in order. Violation of a federal statute or safety regulation is generally deemed negligence *per se. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 318-319 (2005); *Gas Service Co. v. Helmers,* 179 F.2d 101 (8th Cir. 1950). According to the Iowa Supreme Court, "'[th]e unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.'" *Jorgensen v. Horton,*

206 N.W.2d 100, 102 (Iowa 1973) (quoting RST (2D) OF TORTS §
288(B)(1) at 37) (citations omitted).

In the more specific realm of airplane safety regulations,
Iowa courts have only thinly treated negligence *per se*. The
clearest case on point is *Lamasters v. Snodgrass,* 85 N.W.2d 622
(Iowa 1957). There, an airplane passenger injured in a crash
arising from the pilot's reckless flying sued the plane's owner,
who had authorized the pilot to operate the aircraft. *See, id.* at
623. The Court noted that certain state laws "establishe[d] a
standard of care in the operation of aircraft" and that "[a]
breach of this standard unexplained is of course negligence." *Id.*
at 625-26. "As the operator of an aircraft being operated in a
careless or reckless manner and in violation of the care required
[by the statute], [the owner] would be negligent per se and must
be held liable to anyone damaged as a natural consequence of such
conduct." *Id.* Although it did not concern violation of a *federal*
aircraft regulation via shoddy maintenance, *Lamasters* clearly
establishes that violations of public aircraft safety codes can
constitute negligence *per se* under Iowa law. And, depending on
how the regulation defines the class of persons potentially
liable, even those with a passive role in the regulatory violation
can be subject to negligence *per se* (*i.e.,* the owner of the
aircraft who authorized the pilot's use). *See, id.* at 626

(crediting the plaintiff's reading of the statutory language that "the owner is, for liability purposes, identified with and treated as the operator").

Broader principles of Iowa law are in accord. Generally, if a law "lays down a rule or regulation of conduct specifically designed for the safety and protection of persons or property, injuries proximately resulting from its violation to one who, under the circumstances of the case, is within its purview, . . . would be actionable." *Adam v. State,* 380 N.W.2d 716, 724 (Iowa 1986) (internal quotation marks omitted); *accord Wiersgalla v. Garrett,* 486 N.W.2d 290, 292-93 (Iowa 1992) (noting also that harm, to be actionable, must be of a kind the statute was intended to prevent). Further, Iowa courts have indicated a willingness to apply the doctrine of negligence *per se* without regard to whether a particular regulation is municipal, statewide, or federal in origin. *See, e.g., Winger v. CM Holdings, LLC,* 881 N.W.2d 433, 445-449 (Iowa 2016) (holding that negligence *per se* is not limited to violations of statewide laws); *Koll v. Manatt's Transp. Co.,* 253 N.W.2d 265, 270 (Iowa 1977) (finding that an employer's OSHA violation was negligence *per se* as to employees, whom the law was designed to protect).

Cases from other jurisdictions support the proposition that undertaking actions covered by federal aviation regulations

subjects one to a duty of reasonable care, violation of which constitutes negligence *per se.* *See, e.g., Wojciechowicz v. U.S.,* 582 F.3d 57, 67 (1st Cir. 2009) ("The Violation of FAA regulations, which have the force and effect of law, is negligence per se.") (citation omitted); *Gatenby v. Altoona Aviation Corp.,* 407 F.2d 443, 446 (3d Cir. 1968) ("As the pilot of a single engine aircraft, Riguette was required to fly according to FAA visual flight regulations (VFR). Reasonable men could come to no other conclusion on this record but that certain visual flight regulations were violated. The appellant is, of course, liable for any injuries which were proximately caused by this negligence per se.") (citation omitted); *Bibler v. Young,* 492 F.2d 1351, 1359 (6th Cir. 1974); *Rudelson v. U.S.,* 431 F.Supp. 1101, 1107 (C.D. Cal. 1977) ("A violation of Federal Aviation Regulations is negligence per se. This rule is consistent with California law that violation of a safety regulation is negligence per se.") (internal citations omitted). In one particularly salient case, a district court denied the defendants' motion for summary judgment where the plaintiff alleged breach of contract "for failing to provide overhauled or component parts that were 'airworthy' as required by the contracts" coupled with negligence *per se* "based on [a defendant's] failure to follow required FAA regulations in performing the overhaul of the gearbox." *Indemnity Ins. Co. of*

*North Am. v. Am. Eurocopter LLC,* No. 3-cv-949, 2005 WL 1610653, at
*2, 16-17 (M.D.N.C. July 8, 2005).

When other states, such as Nebraska, refuse to extend
negligence *per se* to violations of FAA regulations, there is
typically a broader state policy at play. *See, e.g., In re
Derailment Cases,* 416 F.3d 787, 795 (8th Cir. 2005) ("We agree
with the district court's conclusion that the violation of a
regulation or statute is generally not recognized as negligence
per se under Nebraska law.") (citing *Goodenow v. Dept. of Corr.
Servs.,* 610 N.W.2d 19, 22 (Neb. 2000) ("[A] violation of a statute
or regulation ordinarily is not negligence per se, but is only
evidence of negligence."); *Tank v. Peterson,* 363 N.W.2d 530, 537
(Neb. 1985) (finding that violations of FAA regulations did not
constitute negligence per se)) (citation omitted). Such a broad
refusal to treat *any* safety code violation as negligence *per se* is
anathema to the jurisprudence of the Iowa Supreme Court. *See,
e.g., Wiersgalla,* 486 N.W.2d at 292-93; *Koll*, 253 N.W.2d at 270;
*Jorgensen,* 206 N.W.2d at 102.

Finally, Iowa courts have held at summary judgment that
unexcused and unrebutted allegations of a safety regulation
violation, coupled with undisputed evidence of an injury falling
within the regulation's ambit, create an inference of negligence
*per se* that is actionable separate from a breach-of-contract

claim. In *Boone,* for example, the court found that "one of the particulars of plaintiff's negligence count is based on a safety regulation of the Iowa Safety Code Rules and Regulations, Section 88.9." *Boone,* 383 F.Supp. at 613. Thus, "at least this particular of negligence may be one which arises independently of the contractual duty." *Id.* The Court finds that Sky Jet makes a similar claim in its Complaint, alleging that Defendants "negligently and carelessly violat[ed] the EASA and FAA Regulations." (Compl. ¶¶ 17, 21.) Doubtless the harm at issue in this case – aircraft damage flowing from a crash allegedly attributable to improper maintenance - is of a type the asserted FAA regulations are intended to prevent. The Court finds that Sky Jet's allegation, albeit more general, sufficiently approximates the safety code violation claimed in *Boone.*

In sum, the Court finds ample support for denying Defendants' Motion for Partial Summary Judgment to the extent it turns on a lack of extra-contractual duties owed to Sky Jet. There are no facts before the Court concerning why Elliott, even if it did not perform the maintenance, is free from vicarious liability for Quad Cities' alleged negligence or was incapable of otherwise violating FAA regulations. Similarly, Defendants have not adduced evidence of conformance with FAA regulations, an excuse for non-conformance, or a lack of causation. In light of the equivocal

record and inferences drawn in favor of Sky Jet, Elliott could have retained vicarious liability for the (extra-contractual) negligence of Quad Cities. Further, a reasonable jury could find that both Defendants owed and breached duties, grounded not in the Contract but in FAA regulations, to ensure with reasonable care that adequate replacement parts were installed on the Subject Aircraft. As things stand, however, the Court denies summary judgment to Quad Cities on the antecedent ground that the record fails to establish any contractual relationship with Sky Jet.

### E. Recoverable Damages

Although Sky Jet's recovery is not limited as a matter of law to repair or replacement of the left landing gear, the Court's findings on summary judgment constrain Sky Jet's recoverable damages as follows.

Under Count I, Sky Jet may not recover from Elliott any tort damages precluded by the unambiguous language of the Limitations of Liability section. The relevant clause provides that "in no event shall Company be liable" in negligence for "loss of use of the aircraft or loss of profits, diminution in value or special, incidental or consequential damages or losses." Thus, Sky Jet may not recover from Elliott in tort for loss of use of the Subject Aircraft, lost profits, diminution in value, or special damages. However, the terms "incidental" and "consequential" damages are

- 41 -

creatures of contract law. They do not seem to map neatly onto some of the other forms of damages Sky Jet seeks, such as investigation, maintenance, and recovery costs as well as "property damage to the Subject Aircraft, to a cargo pod affixed to the Subject Aircraft, and to other property in or near the Subject Aircraft." (Compl. ¶ 18.) Accordingly, the Court invites further briefing on the extent to which these terms of contract law foreclose or permit recovery of the other damages Sky Jet seeks in tort.

Under Count II, of course, Sky Jet may seek recovery from Quad Cities for each category of tort damages, because the evidence does not establish as a matter of law that Quad Cities is entitled to the Contract's negligence disclaimer.

Under Count III, Sky Jet may not recover from Elliott any of the damages proscribed by the Limitations of Liability section, including "special, incidental or consequential damages." Sky Jet is, therefore, foreclosed from recovering for the diminished value of the Subject Aircraft and for lost profits, loss of good will, business reputation, and loss of use damages. However, Sky Jet may still recover certain expectation or compensatory damages required to give it what it bargained for, so long as these damages flow "directly and immediately from an injurious act" of Elliott. Black's Law Dictionary 416 (8th ed. 2004). Such damages

include investigation, maintenance, and recovery costs as well as the costs to repair the damage to the Subject Aircraft and to the affixed cargo pod. The Court invites further briefing on whether damage to "other property in or near the Subject Aircraft" was sufficiently immediate under the circumstances to avoid the consequential proscription. (Compl. ¶ 28.)

The caveat to the foregoing analysis, of course, flows from that summary judgment *deus ex machina*: assignment. If evidence at trial shows a valid assignment of the Contract to Quad Cities such that Elliott cannot clothe itself with the negligence disclaimer, then Elliott – to the extent Sky Jet proves that some negligence on Elliott's part proximately caused its injury – may well be subject to liability in tort for any and all of Sky Jet's asserted damages. In that instance, the above damages analysis relative to Counts I and II would simply invert. On the other hand, if such an assignment is established, then Sky Jet's breach-of-contract claim against Elliott fails *ab initio.*

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1. Defendants' Motion for Summary Judgment on Count III is granted in part and denied in part. Sky Jet has no viable warranty claim under the Contract but may pursue a breach-of-

- 43 -

contract claim for damages in excess of the repair or replacement value of the left landing gear.

2.   Similarly, Defendants' Motion for Partial Summary Judgment on Count I based on the Contract's negligence disclaimer is granted in part and denied in part.  The Contract limits liability for negligence but the facts do not establish, as a matter of law, that Sky Jet's recovery is limited to repair or replacement of the left landing gear.

3. Defendants' Motion for Partial Summary Judgment on Counts I and II is denied based on the absence of extra-contractual duties.  First, undisputed facts do not establish Quad Cities' entitlement to claim a contractual relationship with Sky Jet. Second, the record is insufficiently developed for the Court to hold as a matter of law that Elliott cannot be liable for independently tortious negligence, such as negligence *per se* arising from alleged FAA regulatory violations.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: February 24, 2017